Kassow *v.* Feldman et al., Appellants.

Argued October 23, 1936.

Before KELLER, P. J., CUNNINGHAM, BALD-RIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Joseph S. Clark, Jr.* of *Dechert, Smith & Clark,* with him *Harry Cole Bates,* for appellant.

*Abraham Wernick,* for appellee.

OPINION BY PARKER, J., January 29, 1937:
Nathan Kassow obtained a judgment against Leon

Feldman and Sophia Feldman and, on June 19, 1934, caused an attachment execution to be issued and the Metropolitan Life Insurance Company to be summoned as garnishee. Answers to interrogatories and a plea were filed and the case came to trial before a judge in the municipal court without a jury. Judgment was entered for the plaintiff and the garnishee has appealed. The facts, which were few and not involved, are not in dispute, the question raised in this appeal being a purely legal one.

The garnishee issued two small insurance policies on the life of Bessie Feldman, who died prior to the issuing of the attachment execution and left to survive her as near relatives a son, the defendant, Leon Feldman, and a grandchild, Harry Beldner. The policies were payable to the executor or administrator of the estate of the insured but contained the usual "Facility of Payment" clause found in so-called industrial insurance policies. The clause was as follows: "The Company may make any payment or grant any non-forfeiture privilege provided herein to the Insured, husband or wife, or any relative by blood or connection by marriage of the Insured, or to any other person appearing to said Company to be equitably entitled to the same by reason of having incurred expense on behalf of the Insured, or for his or her burial; and the production of a receipt signed by either of said persons, or of other proof of such payment or grant of such privilege to either of them, shall be conclusive evidence that all claims under this Policy have been satisfied."

In its answers to the interrogatories filed July 11, 1934, the garnishee replied that it had not then exercised its option to make payment to any other person than the executor or administrator of the estate of the insured and accordingly did not owe anything to either of the defendants in the original judgment. The

garnishee then plead nulla bona and further averred as part of the plea that Leon Feldman had made claim for the proceeds of a policy, the amount of which was $217.90, and Harry Beldner, a grandson of the insured, had made claim for the proceeds of the other policy, the amount of which was $195.24; that the Jewish Welfare Society had also made claim on the ground that it was equitably entitled to receive the whole amount of the insurance by reason of having expended money for the support and maintenance of the insured and for her burial; that these claims were presented to the garnishee subsequent to the filing of the answers to the interrogatories; and that "thereafter, in September, 1934, a settlement of the matter was arrived at, whereby, with the consent of the Jewish Welfare Society, the sum of $100, was paid to it, Harry Beldner was paid $145.24, and Leon Feldman was paid the sum of $167.90." No question is raised as to the amount paid to Beldner or the Jewish Welfare Society. On the trial of the case the facts set up in the plea were proven and judgment was entered against the garnishee for the amount paid Leon Feldman.

The appellant concedes that the attachment bound any debt or deposit owing by the garnishee to Leon Feldman at the time the attachment was served on it and any such debt or deposit as came into its hands prior to the time of the trial of the issue: *Penna. Co., Exec., v. Youngman,* 314 Pa. 277, 171 A. 594. The tenor of its argument is that it never owed anything to Leon Feldman, the payment which it made having been a mere voluntary payment; that Leon Feldman did not have a claim which he could have maintained against the garnishee and since the claim of the plaintiff against the garnishee arose no higher than that of Feldman the plaintiff was not entitled to judgment against the garnishee. After an analysis of the nature of the rights of Leon Feldman as against the insurer, it ar-

gues that the decisions in *Williard v. Prudential Ins. Co.*, 276 Pa. 427, 120 A. 461, and kindred cases support its contention. In short appellant contends that the Williard case is authority for the proposition that where an industrial life insurance policy is payable to the executors or administrators of insured and contains the usual facility of payment clause, a suit can be maintained only by the executor or administrator and never by a near relative, and since plaintiff's rights rise no higher than defendant's the claim must fail.

In the late case of *Aarons v. Pub. Serv. B. & L. Assn.*, 318 Pa. 113, 115, 178 A. 141, Mr. Justice LINN cites with approval the following excerpt from *Mechanics' Bank v. Little*, 8 W. & S. 207, 219: "The garnishee of a debt may plead anything against the plaintiff in the *scire facias* that he could plead against his own original creditor, except that the debt is not presently demandable; and even that may be pleaded by him in stay of execution. In no other respect does the attaching creditor stand on other ground than that of the creditor for whom he has been substituted by the attachment as a statute assignment or execution." It must, therefore, be conceded that our inquiry must be directed to a consideration of the rights of Feldman as against the garnishee.

In *Williard v. Prudential Ins. Co.*, supra, the policy was payable to the executors or administrators and contained a facility of payment clause substantially the same as in the Feldman policy. The suit was by a brother of the insured, no administration had been raised and the insurer had not elected to pay the policy to any other than the beneficiary named in the policy. It was held (p. 429): "Proceeding to a judicial determination of the provisions of the policy before us, we are compelled to hold, as it provides, that *unless the insurance company shall exercise its option to pay under the 'Facility of Payment' clause*, we cannot permit a

recovery by any person other than the executor or administrator of the insured, for thus the contract is written." (Italics supplied.)

The rule there laid down only applies when the insurance company has not exercised its option to pay under the facility of payment clause. The cases of *Yelda v. W. & S. Life Ins. Co.*, 99 Pa. Superior Ct. 513, and *Burton's Estate*, 116 Pa. Superior Ct. 249, 176 A. 819, go no further than the Williard case. In *O'Hara v. Met. Life Ins. Co.*, 73 Pa. Superior Ct. 434, a recovery was permitted by the widow but no beneficiary was named in the policy and the appeal was from the refusal to open a judgment. The Pennsylvania cases to which we have been referred in the briefs, as well as such as we have found, do not support appellant in this respect.

Our inquiry is, therefore, as to the nature of the claim and particularly whether a designation was made by the insurer which would have supported a suit by Leon Feldman against the insurance company.

On the death of Bessie Feldman, the Metropolitan Life Insurance Company became indebted to someone. The balance due on the policy became an obligation or debt. That debt was due to the estate of Bessie Feldman unless the insurer elected to pay one or more persons from the class described in the facility of payment clause. If the company so elected the obligation was none the less a debt even though the company exercised its power to pay to someone else than the personal representatives. It is idle to suggest that the payment to Feldman was a gift. It was paid by reason of an obligation that arose from the terms of the insurance contract. To justify a payment to a different person than the executor or administrator, it was required that the insurer make a decision as to whether one or more persons of a certain class should receive the proceeds. When the company decided that the son

of the insured, the defendant Leon Feldman, was entitled to the proceeds of the policy, then Feldman became a creditor and we hold that he might have maintained a suit for recovery of the amount allotted to him.

While it is clear that the personal representative of the insured could ordinarily maintain an action on the policy, he could not do so in the face of a decision by the insurer to pay to one of the relatives. That is precisely what was held in *Thomas, Admr. v. Prudential Ins. Co.*, 148 Pa. 594, 24 A. 82. It does not help the garnishee in the slightest that it drew its check and delivered it to Feldman the next moment after it decided that he was the proper person to have the benefit of the insurance. A decision to pay to Feldman necessarily preceded the actual payment. When the decision was made by the Company the attachment became effective for then Feldman might have maintained a suit on his own behalf against the company. While the insurer, if sued by the personal representative, could defeat an action by showing an election to pay a relative or, if sued by the relative, could defeat that action by showing it had not elected to pay to other than the personal representatives, its liability as to one or the other was always present. Just as was held in the case of *Pa. Co., Exec., v. Youngman,* supra, when the attachment issued the amount of the policy could not be seized, but when the company in its capacity as judge decided to pay Feldman, the attachment became effective. *Melnick B. & L. Assn. v. Melnick*, 318 Pa. 120, 178 A. 144. cited by the appellant, is not applicable for there the attachment did not become effective until after the check left the hands of the garnishee.

Judgment affirmed.